NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROY GREENE,**

*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

*Respondent-Appellee*

---

2020-1544

---

Appeal from the United States Court of Federal Claims in No. 1:11-vv-00631-MMS, Chief Judge Margaret M. Sweeney.

---

Decided:  December 28, 2020

---

ROY GREENE, Spring, TX, pro se.

HEATHER LYNN PEARLMAN, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by JEFFREY B. CLARK, C. SALVATORE D'ALESSIO, CATHARINE E. REEVES.

---

Before NEWMAN, O'MALLEY, and TARANTO, *Circuit Judges.*

Opinion for the court filed PER CURIAM.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

PER CURIAM.

Roy Greene sought compensation under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), 42 U.S.C. §§ 300aa-1 to -34, based on his claim that the tetanus-diphtheria (Td) vaccine he received in July 2009 caused his brachial neuritis. The special master first concluded that Mr. Greene did not meet a precondition for invoking a presumption of causation under the relevant provision of the Vaccine Injury Table, a ruling not at issue here. The special master then considered whether, without the aid of the Table presumption, Mr. Greene had proved that the vaccine caused his condition. The special master found that Mr. Greene did not prove actual causation and so was not entitled to recover under the Vaccine Act. The United States Court of Federal Claims (Claims Court) affirmed the special master's denial of recovery. Applying the required deferential standard of review to the special master's findings, we affirm.

I

On July 22, 2009, Mr. Greene received treatment at Clear Lake Regional Medical Center for a puncture wound on his hand. As part of that treatment, he received a Td vaccination. About six weeks later, Mr. Greene began experiencing symptoms of brachial neuritis.[1]

---

[1]    The Vaccine Injury Table identifies brachial neuritis, in relevant part, as "dysfunction limited to the upper extremity nerve plexus (i.e., its trunks, divisions, or cords)," marked upon onset by "severe aching pain in the shoulder and upper arm." 42 C.F.R. § 100.3(c)(6).

In 2011, Mr. Greene filed this action in the Claims Court against the Secretary of Health and Human Services, seeking relief under the Vaccine Act, § 300aa-11, and alleging that the Td vaccine he received caused his brachial neuritis. Initially, Mr. Greene asserted both (1) a claim under the Vaccine Injury Table, 42 C.F.R. § 100.3(a)(I)(B), which provides for a presumption of causation when brachial neuritis symptoms begin within twenty-eight days of the Td vaccination date, and (2) a non-Table claim, for which Mr. Greene had to establish actual causation of the brachial neuritis. In 2015, after an evidentiary hearing, the special master found that Mr. Greene's symptoms of brachial neuritis began no earlier than forty-one days after vaccination—more than the twenty-eight days specified in the Table, and on that basis dismissed Mr. Greene's Table claim. *Greene v. Sec'y of Health & Human Servs.*, No. 11-631V, 2015 WL 9056034, at *1 (Fed. Cl. Spec. Mstr. July 31, 2015).

Mr. Greene continued to pursue his theory of actual causation under our three-part approach laid out in *Althen v. Secretary of Health & Human Services*, 418 F.3d 1274 (Fed. Cir. 2005). In support of his claim, Mr. Greene filed several expert reports, including two from Dr. Thomas W. Wright, and, at the special master's direction, a report from Dr. Marcel Kinsborne. The Secretary moved for a ruling in its favor on the record, which the special master granted in May 2017.

Mr. Greene sought reconsideration under Vaccine Rule 10(e), attaching a second report from Dr. Kinsborne and eighteen scientific articles, as well as a letter from Dr. Vera Byers. The special master granted reconsideration, but again denied entitlement, explaining that the "record does not support [his] allegation that his Td vaccine more likely than not caused his brachial neuritis." *Greene v. Sec'y of Health & Human Servs.*, No. 11-631V, 2017 WL 5382856, at *7 (Fed. Cl. Spec. Mstr. Sept. 26, 2017). On appeal, however, the Claims Court vacated the decision, as having

rested on an incorrect legal standard, and remanded for further proceedings. *Greene v. Sec'y of Health & Human Servs.*, 136 Fed. Cl. 445, 453–54 (2018).

On remand, the special master denied the Secretary's motion for a ruling on the record, but authorized the Secretary to file an expert report, which the Secretary had not previously done. *Greene v. Sec'y of Health & Human Servs.*, No. 11-631V, 2018 WL 3238611, at *1 (Fed. Cl. Spec. Mstr. May 7, 2018). The Secretary submitted a report from Dr. Eric Lancaster, to which Mr. Greene responded with his own reports from Dr. Kinsborne, as well as a new report from Dr. Lawrence Steinman. In August 2019, the special master held a hearing to evaluate Mr. Greene's claim of actual causation. *Greene v. Sec'y of Health & Human Servs.*, No. 11-631V, 2019 WL 4072110, at *1 (Fed. Cl. Spec. Mstr. Aug. 2, 2019).

At the hearing, Mr. Greene's experts, Drs. Steinman and Kinsborne, compared brachial neuritis to Guillain-Barré syndrome (GBS). They cited scientific literature for the proposition that both GBS and brachial neuritis are autoimmune conditions with a common pathogenesis. And they testified that—because six weeks was a reasonable time of onset for GBS—brachial neuritis could also develop in that timeframe. *Id.* at *3–10.

The Secretary's expert, Dr. Lancaster, rejected the analogy between GBS and brachial neuritis, testifying that GBS differs from brachial neuritis in several important respects. *Id.* at *11. Specifically, he stated that brachial neuritis tends to be an "axonal" injury with a "localized nature of the inflammation," whereas GBS is primarily considered a "demyelination" injury that tends to be multifocal or bilateral. *Id.* Next, Dr. Lancaster testified that Mr. Greene's medical records were consistent with brachial neuritis, rather than GBS, stating that the "electrodiagnostic test results . . . suggested to him the presence of 'severe axonal injury.'" *Id.* at *12. Dr. Lancaster also observed that no

one who treated Mr. Greene for brachial neuritis had indicated that his condition may have been caused by his Td vaccine, and he opined that there may have been other triggers for the condition, such as an injury Mr. Greene suffered in early September 2009. *Id.*

On August 2, 2019, the special master found that Mr. Greene had not met his burden of proving actual causation. *Id.* at *22. The special master stated that forty-one days was not a medically acceptable timeframe for the vaccine to have caused the brachial neuritis. *Id.* at *21. In his decision, he explained that Dr. Lancaster's testimony persuasively undermined the reliance on GBS by Mr. Greene's experts for their opinions about Mr. Greene's brachial neuritis. *Id.* at *19–20. Next, the special master articulated several independent bases for his conclusion that "[t]he record provides no objective evidence whatsoever—direct, circumstantial, or otherwise—that [Mr. Greene] was experiencing an autoimmune-derived injury attributable to vaccination," including that (1) Mr. Greene did not exhibit any symptoms until September 2009, when he went to an emergency room with acute pain consistent with brachial neuritis, (2) "nothing from the pre- or post-vaccination record suggest[s] that an autoimmune reaction was brewing in a subclinical form," and (3) Mr. Greene's treating doctors never "implicated the tetanus vaccine as causative of his injuries" or suggested intravenous immunoglobin treatment. *Id.* at *21. On those bases, the special master concluded that Mr. Greene had not established either a proximate temporal relationship between his vaccination and his brachial neuritis (one requirement of *Althen*) or a logical cause-and-effect sequence between his vaccination and his brachial neuritis onset (another requirement of *Althen*). *Id.* at *20–21.

Mr. Greene sought review in the Claims Court, which affirmed the special master's decision. *Greene v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 655 (2020). Although the court determined that some of the special master's

findings of fact were arbitrary and capricious (*e.g.*, regarding the experts' credentials), it ultimately decided that those findings were "unnecessary for [the special master's] conclusion that [Mr. Greene] did not establish that the Td vaccine caused his brachial neuritis." *Id.* at 665–66. The Claims Court concluded that, although it "likely would have reached a different conclusion on the merits of [Mr. Greene's] claim" had it been the finder of fact, it could not disturb the special master's decision under the governing deferential standard of review. *Id.* at 669.

Mr. Greene filed a timely notice of appeal on March 6, 2020. We have jurisdiction under 42 U.S.C. § 300aa-12(f).

II

For Vaccine Act claims, we review the Claims Court's decision de novo, "'applying the same standard of review as [that court] applied to its review of the special master's decision.'" *Lozano v. Sec'y of Health & Human Servs.*, 958 F.3d 1363, 1368 (Fed. Cir. 2020) (quoting *Griglock v. Sec'y of Health & Human Servs.*, 687 F.3d 1371, 1374 (Fed. Cir. 2012)). Although we review any legal rulings de novo, the standard of review for factual matters is highly deferential. *Id.* We determine only "whether the special master's findings were arbitrary and capricious." *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000). "We do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses." *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011); *see also Cedillo v. Sec'y of Health & Human Servs.*, 617 F.3d 1328, 1338 (Fed. Cir. 2010). At least here, where the challenge involves a weighing of evidence, "reversible error is extremely difficult to demonstrate if the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision."

*Lampe*, 219 F.3d at 1360 (internal quotation marks omitted).

Under the Vaccine Act, the burden of proof on whether the vaccine actually caused the injury rests with the claimant, who "must show that the vaccine was 'not only a but-for cause of the injury but also a substantial factor in bringing about the injury.'" *Lozano*, 958 F.3d at 1368–69 (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999)). To do so, a claimant must prove, by a preponderance of the evidence, three elements specified in *Althen*:

> (1) a medical theory causally connecting the vaccine and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury.

418 F.3d at 1278. For the first element, the claimant must demonstrate that the vaccine at issue can cause the injury alleged. *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355–56 (Fed. Cir. 2006). For the second element, the claimant "must show that the vaccine was the 'but for' cause of the harm." *Id.* at 1356. For the third element, the claimant must prove "that the onset of symptoms occurred within a timeframe for which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation in-fact." *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008).

In this case, the special master agreed that Mr. Greene proved the first element, citing expert testimony and the "ample prior decisions associating vaccines containing a tetanus component with brachial neuritis." *Greene*, 2019 WL 4072110, at *16. But the special master found that Mr. Greene had not proved the other two *Althen* elements—a

logical cause-and-effect sequence and a proximate temporal relationship between the vaccine and injury. *Id.*

## III

On appeal, Mr. Greene principally argues that the special master failed to account adequately for specific pieces of evidence, including Mr. Greene's full medical history and certain medical literature relevant to the six-week time from vaccine to the onset of brachial neuritis in his case. Inf. Br. for Pet. at *1–2. Mr. Greene also seeks relief on the grounds that (1) his counsel did not follow his instructions, (2) he did not receive a jury trial, and (3) he is entitled to costs. *Id.* We review these contentions in turn, applying the required deferential standard of review to factual findings of the special master.[2]

## A

Regarding Mr. Greene's challenge to the special master's treatment of evidence, we note first that Mr. Greene cannot now challenge the special master's 2015 finding that the date of onset of his brachial neuritis was forty-one

---

[2] Mr. Greene mentions certain other contentions that, in the Claims Court, did not appear in his counsel-signed Memorandum of Objections, but only in an addendum that the Claims Court rejected because it was not signed by counsel (when Mr. Greene was represented). *See* Inf. Br. at *1; Pet. Addendum at *1–2 (filed Sept. 9, 2019). Because Mr. Greene has not shown error in the Claims Court's rejection of the addendum, we do not consider contentions that appeared only in that document.

In response to Mr. Greene's request for access to certain trial-court record material now that he is proceeding pro se, we ordered the government to supply him two transcripts from the proceedings before the special master, and the government did so. We provided Mr. Greene an opportunity to file a new brief, but he did not file one.

days after vaccination. Although Mr. Greene testified that his symptoms began earlier, he did not contest the special master's finding as to the date of onset before the Claims Court. Memorandum of Objections for Pet. at 4 n.3 ("While Mr. Greene does not agree with [the date of onset as determined by the special master], Mr. Greene is not challenging the ruling."). Arguments not properly preserved are forfeited. R. Ct. Fed. Cl., Appendix B, Vaccine Rule 8(f)(1) ("Any fact or argument not raised specifically in the record before the special master will be considered waived and cannot be raised . . . on review of a special master's decision.").

Mr. Greene contends that the special master did not consider his "[f]ull medical [h]istory." Inf. Br. at *1. But he has not so demonstrated. The special master considered Mr. Greene's medical records in his decision, noting that September 2009 was the first time Mr. Greene experienced symptoms of brachial neuritis, that there was no indication in the records of any subclinical form of brachial neuritis, and that Mr. Greene's treating physicians never suggested in the records any link between his Td vaccine and his brachial neuritis. *Greene*, 2019 WL 4072110, at *21. Mr. Greene has not shown a material failure to consider medical records that would affect resolution of the causation issue once, as required, the binding determination of date of onset is accepted.

Mr. Greene suggests that the special master did not consider certain medical-record information. But as to some of the information he now cites, the Secretary states that the information was not before the special master, and Mr. Greene has not indicated, let alone shown, otherwise. *See* Br. of Resp. at 7 (discussing amount of tetanus in Mr. Greene's body and number of tetanus-containing vaccines he received). In any event, Mr. Greene has not shown that the special master failed to consider medical-record

information that was before him and material to causation given the date of onset.

The only medical-record information Mr. Greene identifies as placed before the special master is the record information considered at the special master's hearing to determine the date of onset of Mr. Greene's symptoms. *See* Addendum for Pet. at \*2. Mr. Greene notes that the special master credited the records of physician Dr. Jeffery Watts, but required testimony about other treating physicians' records needing clarification—notably, those of Dr. Chu. *Id.* Mr. Greene has not shown error in this regard, much less error material to the causation question. The special master had good reason to scrutinize Dr. Chu's records because they, unlike Dr. Watts's records, suggested conflicting symptom-appearance dates. Ruling Regarding Findings of Fact, No. 11-631V, ECF No. 56, at \*12 (July 31, 2015). Dr. Chu, in his testimony, explained the different date references as applying to an incident, on one hand, and symptom appearance, on the other. *See* Testimony of Dr. Chu, ECF No. 53, Tr. 23–24, 27 (Mar. 25, 2015). The special master reasonably credited the explanation in finding the date of onset. Mr. Greene has not shown otherwise. He also has not shown how requiring Dr. Watts to testify as to the accuracy of his records could cast doubt on the special master's inferences drawn from the records discussed or why even if one adopted Mr. Greene's interpretation of Dr. Chu's records, the special master had to view those records, dated over a month after Mr. Greene first reported to the emergency room with symptoms of brachial neuritis, should be considered as more persuasive than the contemporaneous records from Mr. Greene's other treating physicians, all of whom indicated that the symptoms began in September 2009. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993) (Contemporaneous "[m]edical records, in general, warrant consideration as trustworthy evidence.").

Mr. Greene has not shown lack of substantial evidence to support the determination of what those records as a whole showed or failed to show about a cause-effect connection between the vaccine and the brachial neuritis in Mr. Greene's case. The Claims Court concluded that one of the special master's three subsidiary findings was deficient—the finding that it was significant that the records did not reveal "subclinical" evidence of brachial neuritis. *Greene*, 2019 WL 4072110, at \*21. But the Claims Court also concluded that the other two findings about the records were adequately supported and themselves allowed the special master to find that the records as a whole undermined rather than supported the claim of causation of the injury by the vaccine. We agree.

The special master found that Mr. Greene did not experience symptoms of brachial neuritis until September 2009, nearly six weeks after receiving his Td vaccine but only days after suffering an injury from physical exertion, thus presenting a plausible alternative cause. *Id.* at \*21–22. The special master also found that Mr. Greene's medical records indicated that none of Mr. Greene's treating doctors had suggested in the records that his symptoms were caused by his Td vaccine. *Id.* Such "medical records . . . are favored in vaccine cases, as treating physicians are likely to be in the best position to determine whether 'a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury.'" *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1326 (Fed. Cir. 2006) (alteration in original) (quoting *Althen*, 418 F.3d at 1280); *see also Cucuras*, 993 F.2d at 1528. The special master's findings are plausibly drawn from the records as a whole. *See Cedillo*, 617 F.3d at 1338. We reject Mr. Greene's challenge to the special master's determination that Mr. Greene did not establish a logical cause-and-effect relationship between vaccine and injury by a preponderance of the evidence.

## B

Mr. Greene argues that the special master did not adequately consider certain medical literature bearing on whether he established a proximate temporal relationship between his vaccine and his brachial neuritis under the third requirement of *Althen*.[3] We reject this contention on its merits, while noting that, in any event, the special master's finding as to the cause-and-effect relationship independently supports affirmance here.

In his decision, the special master thoroughly reviewed several of the articles presented by the parties and the testimony given by their experts. *Greene*, 2019 WL 4072110, at *3–13. On that basis, the special master found that, for brachial neuritis, an onset no earlier than six weeks after the vaccine was not temporally proximate. In particular, the special master relied on his finding that Dr. Lancaster credibly showed that the studies on which Mr. Greene principally relied—which concerned the onset of GBS—were not a persuasive foundation for a finding that six weeks was temporally proximate for brachial neuritis, a different condition. *Id.* at *16–21.

Mr. Greene suggests a failure on the part of the special master to consider certain significant medical literature. "We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision." *Moriarty v. Sec'y of Health & Human Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016); *see also Hazlehurst v. Sec'y of Health & Human Servs.*, 604 F.3d 1343, 1352 (Fed. Cir. 2010) (same).

---

[3]    Mr. Greene describes this literature as addressing "Parsonage Turner Syndrome." Inf. Br. at *1. The parties and their experts agree that some medical literature refers to brachial neuritis by that name. *See Greene*, 2019 WL 4072110, at *1 n.3.

And here, Mr. Greene has not shown that the special master failed to consider any literature that was presented to the special master and needed to be discussed, over and above the literature that was discussed, in order for a finding to be sufficiently supported.

The only literature that Mr. Greene has identified as not adequately addressed is not helpful to his case or is merely cumulative of the literature that the special master *did* discuss. Specifically, Mr. Greene identifies: (1) pages taken from a report on the 1966 "proceedings of the international conference on tetanus," Addendum for Pet. at *8–11; (2) a 1948 study discussing "Shoulder-Girdle" syndrome and its relationship to "injection of serum," *id.* at *12–17; (3) a 1985 study reviewing medical personnel for compliance with tetanus vaccination guidelines, *id.* at *18–21; (4) a sentence from the abstract of an investigation of the "detoxification mechanism of formaldehyde-treated tetanus toxin," *id.* at *22–23; and (5) a page from the New England Journal of Medicine (dated 1969) that discusses the prevalence of tetanus and suggests a schedule for vaccination, *id.* at *28. This literature, even if properly raised, focuses on the pathology of tetanus and the proper dosage and procedures for administering a Td vaccine. None of the documents even mentions GBS or brachial neuritis, let alone provides evidence that symptoms like Mr. Greene's could arise within forty-two days from receiving a Td vaccine.

Therefore, Mr. Greene has not shown how the special master's finding about temporal proximity could reasonably have been altered by this literature, given what Mr. Greene's experts said about this literature and the special master's crediting of Dr. Lancaster's response to Mr. Greene's evidence. The evidence Mr. Greene says was not adequately considered was, in context, essentially redundant of or irrelevant to the evidence the special master expressly discussed.

Mr. Greene also challenges the special master's consideration of expert testimony pertaining to the relationship between brachial neuritis and GBS. Inf. Br. at *1 (citing Addendum for Pet. at *2). He argues specifically that Dr. Lancaster "never gave the differences between Parsonage Turner Syndrome, [b]rachial [n]euritis, and GBS." Addendum for Pet. at *2. Mr. Greene contends that this is error because the special master ultimately found that GBS and brachial neuritis were sufficiently different, such that evidence that GBS could occur more than six weeks after Td vaccination was not helpful in determining a medically reasonable date of onset for brachial neuritis. *Id.*

Contrary to Mr. Greene's assertion, the special master expressly addressed the differences between GBS and brachial neuritis (the latter also named Parsonage Turner Syndrome). The special master, in reviewing Dr. Lancaster's testimony, noted that "Dr. Lancaster . . . took issue with the efforts of [Mr. Greene's] experts to borrow GBS onset timeframes for this case, stressing the differences in the two conditions." *Greene*, 2019 WL 4072110, at *11; *see also* Testimony of Dr. Lancaster, ECF No. 139, Tr. 87–90 (May 9, 2019) (explaining the "several important difference" between GBS and brachial neuritis). The special master devoted two full paragraphs of his opinion to Dr. Lancaster's testimony about the distinctions between GBS and brachial neuritis (relating to their distinct pathologies and their defining symptoms). *Greene*, 2019 WL 4072110, at *11. That testimony provides support for the special master's determination that "[d]espite some of their common features, GBS is simply not sufficiently comparable to brachial neuritis to apply the same onset timeframe to both." *Id.* at *18. Because the special master considered and weighed evidence concerning the relationship between GBS and brachial neuritis, we do not disturb his findings as to their dissimilarities or the reasonableness of forty-two days as the time of onset for brachial neuritis.

We conclude that the special master did not commit reversible error in finding no proven temporal proximity under *Althen*.

C

Mr. Greene raises several other issues on appeal, none of which calls for disturbing the judgment on appeal.

First, he argues that he was entitled to a jury trial. Inf. Br. at *2. But the Vaccine Act does not authorize juries to hear entitlement claims. Rather, in enacting the Vaccine Act, Congress authorized special masters at the Office of Special Masters to adjudicate claims to entitlement. 42 U.S.C. § 30aa-12. Nor does the jury-trial right stated in the Seventh Amendment to the Constitution apply to a monetary claim such as this one brought against the United States as sovereign. *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *Galloway v. United States*, 319 U.S. 372, 388–89 (1943); *Washington Int'l Ins. Co. v. United States*, 863 F.2d 877, 878–79 (Fed. Cir. 1988).

Next, Mr. Greene argues that he is entitled to an award of litigation costs and fees under the Vaccine Act, 42 U.S.C. § 300aa-15(e). Inf. Br. at *1–2. His request for fees and costs, however, is still pending in the Claims Court and is not properly part of the present appeal.

Finally, Mr. Greene expresses dissatisfaction with his counsel's conduct during the proceedings before the special master and the Claims Court. Inf. Br. at *1. He did not properly present this grievance to the Claims Court, however, and the issue is therefore not preserved for purposes of this appeal. Vaccine Rule 8(f)(1). Timely initial presentation to the trial court of such a claim is especially important given the Supreme Court's long recognition of a strong rule that "each party is deemed bound by the acts of his lawyer-agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962); *see also Pioneer Investment Servs. Co. v.*

*Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 397 (1993); *Smith v. Ayer*, 101 U.S. 320, 326 (1879).

IV

For the foregoing reasons, the judgment of the Claims Court is affirmed.

The parties shall bear their own costs on appeal.

**AFFIRMED**

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROY GREENE,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2020-1544

---

Appeal from the United States Court of Federal Claims in No. 1:11-vv-00631-MMS, Chief Judge Margaret M. Sweeney.

---

O'MALLEY, *Circuit Judge*, dissenting.

Because I agree with the United States Court of Federal Claims that the special master's credibility findings were arbitrary and capricious and because multiple other findings are unsupported by the record, I would reverse the special master's determination and remand.  I, accordingly, respectfully dissent.